IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBIN ROBINSON SHEPHERD,            )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       1:20CV966
                                    )
KILOLO KIJAKAZI,                    )
Acting Commissioner of Social Security,[1] )
                                    )
                Defendant.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robin Robinson Shepherd ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on January 3, 2018, alleging a disability onset date of September 30, 2015. (Tr. at 13, 180-82.)[2] Her claim was denied initially

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #11].

(Tr. at 81-92, 107-10), and that determination was upheld on reconsideration (Tr. at 93-106, 114-17). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 118-21.) Plaintiff attended the subsequent video hearing on May 30, 2019, at which time Plaintiff requested that the hearing be postponed for Plaintiff to obtain counsel. (Tr. at 13.) The ALJ granted Plaintiff's request, and, on November 20, 2019, both Plaintiff and an impartial vocational expert appeared and testified at the rescheduled video hearing, during which Plaintiff was represented by an attorney. (Tr. at 13.) Following the hearing, ALJ concluded that Plaintiff was not disabled within the meaning of the Act from September 30, 2015 (the Alleged Onset Date) through December 31, 2017 (the Date Last Insured). (Tr. at 22.) On August 27, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" from her alleged onset of September 30, 2015, through her date last insured of December 31, 2017. Plaintiff therefore met her burden at step one of the sequential evaluation process. (Tr. at 15.) At step two, the ALJ further determined that Plaintiff suffered from two severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

Degenerative disc disease of the lumbar spine, and right foot fracture[.]

(Tr. at 15.) The ALJ next found at step three that neither of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 17-18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, through her date last insured of December 31, 2017, Plaintiff had the RFC to perform light work with the following, non-exertional limitations:

> [Plaintiff] could have occasionally climbed ramps and stairs; could not climb ladders, ropes, or scaffolds; could have occasionally balanced, stooped, kneeled, crouched, and crawled; could not work at unprotected heights or be exposed to dangerous moving mechanical parts; was limited to a moderate noise environment; and after 45 minutes of standing, could have sat for one to two minutes, without going off-task or leaving the workstation.

(Tr. at 18.) At step four of the sequential analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff's past relevant work as an accounts receivable clerk and a collection specialist did not exceed her RFC. (Tr. at 21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21-22.)

Plaintiff now challenges the ALJ's findings in two respects. First, she contends that the ALJ erred by failing to include depression and anxiety among Plaintiff's severe impairments at step two of the sequential analysis. Second, Plaintiff argues that the ALJ failed to conduct a proper function-by-function analysis when assessing her RFC. After a thorough review of the record, the Court finds that neither of Plaintiff's contentions merit remand.

A. Mental impairments

Plaintiff first contends that the ALJ should have included severe mental impairments at step two of the sequential analysis. At step two of the evaluation process, a plaintiff must establish a "severe impairment," that is, an impairment or combination of impairments that

6

significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

However, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted); see also Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987169, at *9 (S.D. W. Va. Sept. 16, 2016) (collecting cases). Therefore, in considering the alleged error at step two in this case, the Court also considers the ALJ's explanation and discussion throughout the sequential analysis. In this case, at step two, the ALJ identified Plaintiff's degenerative disc disease and right foot fracture as her only severe impairments. (Tr. at 15.) The ALJ also expressly determined that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and were therefore nonsevere." (Tr. at 16.) Notably, in making

Case 1:20-cv-00966-WO-JEP   Document 19   Filed 02/15/22   Page 7 of 20

that determination, the ALJ included an extensive analysis of Plaintiff's mental impairment and its effect on her ability to work. The ALJ first explained as follows:

> At the hearing, [Plaintiff] testified that she started mental health therapy in 2016 for her depression and anxiety. [She further] testified that she went to the hospital for 24-hour observation due to her mental health. [Plaintiff] indicated that the hospital staff, during this stay, recommended she start participating in mental health therapy. [She] testified that she writes everything down because she has poor short-term memory. Moreover, [Plaintiff] said that she will forget to do things unless she writes them down. A review of the objective medical evidence revealed that [Plaintiff] participated in mental health therapy for her depression and anxiety (Exhibit 6F). On August 30, 2016, [she] told her therapist that she was having anxiety, and felt restless at times (Exhibit 13F/15). Exhibit 13F shows several records of mental health treatment. The records show that [Plaintiff] was compliant with her regimen and attended almost all of her therapy sessions. After the date last insured, Julie Whitt, L.C.S.W., completed a report of [Plaintiff's] objectives of therapy. It showed that [Plaintiff] established goals. The goals were specifically tailored to improve [her] condition. Ms. Whitt found that [Plaintiff] had not progressed in her any of goals to improve her condition (Exhibit 13F/69). The objective medical evidence showed that [Plaintiff] participated in treatment with Stacey Blyth, M.D. [Plaintiff] told Dr. Blyth that she was doing well with counseling. [Plaintiff] said that counseling was helping her manage her stress (Exhibit 9F/35).
>
> However, I found that [Plaintiff's] mental health impairments are non-severe. The objective medical evidence shows that [Plaintiff] was compliant with her treatment. However, most of her treatment noted mostly normal or mild findings. Neither her therapist nor her providers opined to any short-term memory problem. . . . Moreover, [Plaintiff] told Dr. Blyth that she was doing well. [She] also testified that she has good days and she has bad days from her depression and anxiety. [Plaintiff] also tends to her husband, who is recovering from Stage IV Cancer. [She] drives him around and takes him to his appointments. [Plaintiff] can complete her daily activities. She testified that her physical limitations impair her ability to complete them.

(Tr. at 16.) In short, the ALJ found that medical evidence failed to support Plaintiff's claim of a severe mental impairment. Nevertheless, the ALJ went on to further evaluate the effect of Plaintiff's mental impairment with respect to the four broad areas of mental functioning:

8

> In making this finding, I have considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> Based on the objective medical evidence cited above, I make the following determinations, <u>in regards to understanding, remembering or applying information, I found that [Plaintiff] had a mild limitation. Although [Plaintiff] writes everything down, the objective medical evidence failed to show any issues within this domain. [Plaintiff] completed high school. [She] worked as an accountant. [Plaintiff] did not testify to issues with reading, writing, or similar abilities.</u> The next functional area is interacting with others. In this area, [Plaintiff] had mild limitation. [She] cares for her husband [and] goes out to complete her errands. [Plaintiff] testified that she mostly stays home and did have a fallout with her last employer. Also, the therapy records indicate that she had some difficulty with her son. Nevertheless, her therapist never found that [Plaintiff] was incapable of relationships with others. [She] only had the one-day hospital visit. <u>The third functional area is concentrating, persisting or maintaining pace. In this area, [Plaintiff] had mild limitation. As previously mentioned, [Plaintiff] testified to difficulties with her memory. Nevertheless, the objective medical evidence failed to show any testing or opinions about this issue. [Plaintiff] is able to complete her daily activities and tend to her husband's health.</u> The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] had mild limitation. The objective medical evidence failed to show any major issues within this domain. I must note that I found these domains mild given [Plaintiff's] compliance with mental health treatment and that she is in treatment for depression and anxiety. I found that these impairments only cause a minimal limitation in her ability to work.
>
> Because [Plaintiff's] medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they were nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. at 16-17.)

Significantly, the ALJ's analysis emphasized the total lack of testing or opinion evidence supporting Plaintiff's subjective symptom complaints. The ALJ further noted that, in light of Plaintiff's treatment history, she gave Plaintiff the benefit of the doubt in finding her mildly limited in the relevant domains. The ALJ's determination at this step directly reflects the

record evidence as a whole, and is also consistent with the specific findings of the State agency psychological consultants, Dr. Sayers and Dr. Berkowitz, who both found that Plaintiff had no more than mild limitations in any functional area and that these limitations did not translate to any mental limitations in Plaintiff's RFC. (Tr. at 86-87, 99-100.) In fact, Plaintiff points to no specific report or opinion from her providers or otherwise suggesting the need for mental restrictions of any kind. She simply asks the Court to reweigh the evidence and arrive at a different conclusion.

In support of her claim, Plaintiff cites to treatment notes from June and July of 2016, when Plaintiff was tearful and anxious and was ultimately diagnosed with major depressive disorder after a one-day hospitalization in July 2016. However, the ALJ acknowledged this treatment, but also noted the subsequent treatment records and the activities reflected in the record, including that Plaintiff later reported that she was doing well and that counseling was helping her manage her stress. In this regard, Plaintiff's records reflect that after her one-day hospitalization, she began counseling and she was treated with medication, and after some medication adjustments over the next two months in August and September 2016, she reported improvement with counseling and medication, including specifically reporting to her providers in October and November 2016 that she was no longer in a "black hole." (Tr. at 462, 506, 508, 510). Her therapist characterized her as "recovering from depression" and encouraged her in her efforts to re-enter the workforce (Tr. at 508, 510). Subsequent records for 2017 and early 2018 reflect that Plaintiff continued to experience anxiety and depression, but her therapist's notes reflect improvement, with a greater focus on navigating her husband's illness and her relationship with her son (Tr. at 524, 528, 536, 538, 540, 546, 889, 899, 904),

and other providers' treatment records generally reflect normal or mild mental status findings, including normal mood and affect, normal behavior, no nervousness or anxiety, and that she is "doing well" and is "very pleased" with counseling. (Tr. at 16-17, 463, 465, 471, 475, 598, 600, 603, 610-11, 613.) In addition, the record reflects that she was able to take care of her husband and manage his medical treatments and continue with ordinary household activities, with some adapting by writing things down, as noted by the ALJ. (Tr. at 16-17, 20.)

Viewed as a whole, the question whether Plaintiff suffered "mild" versus "moderate" limitations in understanding, remembering or applying information and in concentrating, persisting or maintaining pace is a close one, and substantial evidence exists in the record to support either conclusion. In Social Security cases, those types of close decisions are for the ALJ. In finding that Plaintiff's difficulties with her memory caused only mild limitations, the ALJ relied on the mostly normal or mild findings in the treatment records, and the lack of any testing or opinion evidence reflecting any greater limitations.[5] The ALJ also relied on Plaintiff's ability to complete her daily activities and tend to her husband's health, and the ALJ noted that she had no limitations on her ability to read and write to the extent she needed to write things down. (Tr. at 16-17, 20.) The ALJ acknowledged that Plaintiff's impairments did impact her, but concluded that the impact was "mild" and did not significantly limit her abilities to do basic work activities. Where, as here, substantial evidence supports the ALJ's

---

[5] Indeed, as noted above, the state agency psychologists, Dr. Sayers and Dr. Berkowits, reviewed the record and similarly concluded that Plaintiff had no more than mild limitations in each of the functional areas. (Tr. at 86-87, 99-100.) To the extent Plaintiff argues that the ALJ have little weight to the state agency opinions, the record reflects that the state agency physicians, Dr. Gallis and Dr. Terry, found Plaintiff capable of medium work (Tr. at 88-89, 101-03), but the ALJ gave little weight to these opinions and instead adopted an even more restrictive limitation to light work. With respect to the mental impairments, even if the ALJ did not specifically rely on Dr. Sayers and Dr. Berkowitz, the ALJ noted repeatedly that Plaintiff had not pointed to any opinion evidence that would support greater restrictions or limitations.

11

evaluation of Plaintiff's mental impairments, it is not for the Court to re-weigh the evidence or reconsider the ALJ's determinations. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, but rather whether the ALJ's determination is supported by substantial evidence. As recently noted by the Supreme Court in Biestek v. Berryhill, 139 S. Ct. 1148 (2019), "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . .It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" 139 S. Ct. at 1154 (internal citations omitted). Accordingly, the Court finds no basis for remand.

      B.     Function-by-function analysis

Plaintiff next contends that the ALJ failed to properly explain the basis for her physical RFC assessment, particularly related to Plaintiff's allegations of foot pain and back pain. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotations and citations

omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637.

In the present case, Plaintiff contends that the ALJ "fail[ed] to build an 'accurate and logical bridge' from the evidence to her RFC conclusions." (Pl.'s Br. at 18.) In particular, she argues that the ALJ "did not adequately explain how the evidence she summariz[ed] aligns with SSR 96-8p, the RFC findings she adopted or how she resolved the evidence that

13

conflicted with her RFC findings." (Pl.'s Br. at 18.) In addition, as part of that claim, "[Plaintiff] contends that the ALJ failed to explain or identify substantial evidence to support her negative findings regarding the consistency of [Plaintiff's] allegations with the evidence." (Pl.'s Br. at 18.)

Turning first to the ALJ's evaluation of Plaintiff's allegations regarding her symptoms, the Court notes that, under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

14

Arakas, 983 F.3d at 95–96. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

> (i) [Plaintiff's] daily activities;
> (ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained her reasons for deviating from Plaintiff's statements regarding the impact of her symptoms on her ability to work. Rather than explaining what, if any, additional functional limitations are required based on these records, Plaintiff simply asserts that evidence supports a finding of total disability under the Act. However, whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson,

15

483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").

Here, the ALJ reviewed the medical evidence, the opinion evidence, Plaintiff's testimony, and the record, and explained her analysis of Plaintiff's subjective complaints:

> [Plaintiff] had severe impairments, which caused functional limitations, during the alleged period of disability. However, the totality of the record did not support the severity of [Plaintiff's] allegation that [she] was incapable of working during the period under review. [Plaintiff] completed a function report. She said that she had some difficulty with her personal care. [Plaintiff] said that she could cook, and complete some chores. [She] reported that she could shop for groceries . . . [and] handle her finances. She reported difficulty lifting, squatting, bending, walking, sitting, and kneeling (Exhibits 2E, 7E). [Plaintiff's] spouse submitted a third-party function report. He generally stated that his wife was functionally limited (Exhibit 4E). I considered this report and viewed it within the context of the entire record, including the medical reports. I have accepted that [Plaintiff] was functionally limited from her impairments during the alleged period under review; her spouse's observations did not alone support a conclusion that [Plaintiff] was incapable of working within the constraints of the [RFC] assessment. I found this report non-persuasive.
>
> [Plaintiff] testified that [she] fell down the stairs in September 2015. [She] suffered a back injury as well as a concussion. [Plaintiff] testified that she had constant pain, but had some relief from her medication. She testified that she could lift approximately 15-20 pounds in 2017. [Plaintiff further] testified that she dropped two things on her right foot in 2017, which cause pain. [She] testified that she can only complete her chores for a short period of time. [Plaintiff] indicated that she suffers from pain after completing them. [She] testified that she started taking care of her husband in 2017. She stayed at home and tended to his care . . . [and drove] her husband to his appointments. [Plaintiff] testified that she has applied for positions from 2016-2019 . . . [but] reported that she had not been hired for any of these positions.
>
> The objective medical evidence, before the date last insured, showed treatment for [Plaintiff's] back and foot. [She] did not have any surgery to treat these conditions. [Plaintiff] also had an elbow injury, but the treatment and injections [for this injury] occurred before the alleged onset date. The reports from [Plaintiff's] providers, from 2015-2017, inferred that [Plaintiff] was responding to conservative treatment. She did receive injections for her pain [and] took

Case 1:20-cv-00966-WO-JEP   Document 19   Filed 02/15/22   Page 16 of 20

> medication as well. After the date last insured, [Plaintiff] started physical therapy for her back pain. . . .
>
> In giving [Plaintiff] the benefit of the doubt, the [RFC] for the period under review addressed her back pain by limiting her to light work, limited postural movements, and environments, which might have exacerbated her condition. In particular, [Plaintiff] admitted that she could have lifted upwards of 20 pounds during the period under review. The [RFC] has considered [this] with its formulation. I must note that the [RFC] addressed [Plaintiff's] foot pain with a sit/stand option. [She] can sit after standing for 45 minutes due to her history of right foot pain. No single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggested that [Plaintiff] was not as limited as was alleged during the period under review.

(Tr. at 20-21.)

Plaintiff now argues that the ALJ failed to expressly mention certain specifics of Plaintiff's testimony, including her assertion that she could "perform activities such as cleaning the house for only 15 minutes prior to requiring a rest break" due to pain, necessitating "'three days to clean her home.'" (Pl.'s Br. at 19-20) (citing Tr. at 52-54). However, the administrative decision, as set out above, clearly recounts Plaintiff's testimony "that she can only complete her chores for a short period of time . . . [and] that she suffers from pain after completing them." (Tr. at 20.) Plaintiff also asserts that the ALJ neglected to mention that Plaintiff's "right foot pain is the result of a likely Freiberg's Disease of the second metatarsal of her right foot." (Pl.'s Br. at 20.) In making this challenge, Plaintiff suggests no additional limitations resulting from such a diagnosis, nor does she acknowledge that a definitive diagnosis of Freiberg's Disease was never made. She simply offers it as supportive evidence of Plaintiff's foot pain, which the ALJ expressly acknowledged and accounted for in the RFC assessment. Notably, an ALJ is not required to discuss each and every piece of evidence, see Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Rather, the relevant issue is whether

17

the ALJ selectively quoted from the record, omitting evidence favorable to Plaintiff. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). In the present case, Plaintiff presents no evidence that the ALJ cherry-picked from the record to support a finding of non-disability. The administrative decision reflects consideration of Plaintiff's testimony, function reports from both Plaintiff and her husband, numerous treatment notes, and objective testing, and sets out the ALJ's evaluation of that evidence. To the extent that Plaintiff now argues that the ALJ could have interpreted the evidence in a light more favorable to Plaintiff, Plaintiff essentially asks this Court to reconsider the evidence and reach a different conclusion. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

Plaintiff's related function-by-function challenge similarly fails. As expressly set out in the ALJ's decision, Plaintiff testified that she could lift upwards of 20 pounds during the time period at issue, and the ALJ limited her to light work as a result. (Tr. at 21.) The ALJ also included postural and environmental limitations in the RFC to limit work activities "which might have exacerbated [Plaintiff's] condition" prior to her date last insured. (Tr. at 20.) Although Plaintiff particularly takes issue with the RFC findings regarding her foot impairment, the ALJ specifically "note[d] that the [RFC] addressed [Plaintiff's] foot pain with a sit/stand option. [She] can sit after standing for 45 minutes due to her history of right foot pain." (Tr. at 21.) The ALJ then found that Plaintiff could return to her prior work as generally performed, specifically the positions of Accounts Receivable Clerk and Collection Specialist, both of which are sedentary. Significantly, Plaintiff suggests no further limitations warranted by the evidence. She simply argues that the ALJ failed to provide a sufficient explanation,

18

supported by specific evidence, of how she arrived at her RFC conclusions. See Monroe, 826 F.3d at 189-90. However, as further explained above, the ALJ properly considered all of the relevant evidence in concluding that Plaintiff's foot impairment was not as limiting as Plaintiff alleged. Nevertheless, the ALJ expressly gave Plaintiff "the benefit of the doubt" in assessing her RFC. (Tr. at 20-21.) In particular, the ALJ declined to adopt the findings of the State agency medical consultants, who opined that Plaintiff could perform medium work with no postural or environmental limitations. (Tr. at 19-20, 88-89, 101-02.) No other medical sources suggest a need for greater restrictions (Tr. at 21), nor does Plaintiff point to any evidence supporting such restrictions other than her subjective complaints.[6] Accordingly, the present case does not present a situation "where an ALJ [has failed] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #15] be

---

[6] The Court notes that the Functional Report from Plaintiff's husband notes "no problems" in walking or needing to stop and rest (Tr. at 249), and Plaintiff's testimony at the hearing was not completely clear, initially noting that she would "constantly stay on the go" doing work such as cleaning her husband's truck, mowing the yard, weed eating, trimming the bushes, and washing the dishes, until she was exhausted (Tr. at 48-49), but then later testifying that she could only work 15 minutes before stopping to rest (Tr. at 52). In addition, the medical records reflect short term limitations on the two occasions immediately after Plaintiff injured her foot in January 2017 and September 2017 (Tr. at 419-20, 479-80, 555-57), but the records also reflect that she was still walking and "on her feet quite a bit", and that she improved and was "mostly doing well" with a normal gait, and with encouragement to stretch and exercise (Tr. at 471, 495, 540, 555-59, 560, 642, 889, 894, 1039-40, 1043, 1080). The ALJ considered the treatment records at length (Tr. at 18-19), noted the mild findings on the MRIs, and considered Plaintiff's reported activities, conservative treatment, and her improvement and good response to treatment (Tr. at 20), and then gave Plaintiff the benefit of the doubt by including greater limitations than the state agency physicians, including the limits on standing and walking with the option to sit at frequent intervals, thus providing a sufficient explanation with substantial evidence in the record to support that determination.

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #17] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 15th day of February, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge